UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARIF S. MIFFIN,

        Plaintiff,

v.                        Case No. 8:08-cv-592-T-33EAJ

KURT A. BRADSHAW,

        Defendant.

## **O R D E R**

This cause is before the Court on Defendant Bradshaw's motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 16). Because genuine issues of material fact remain for trial, Defendant Bradshaw's motion for summary judgment will be denied.

Procedural Background

Plaintiff Miffin filed his civil rights complaint on March 28, 2008, alleging that on September 4, 2007, Defendant Bradshaw, a St. Petersburg Police Officer, "deprived me of my civil rights under color of law by badly injuring me with a taser without adequate warning or notification and without justification." (Doc. No. 1, Complaint, p. 11).

In support of his claim Miffin alleges:

> On September 4, 2007, I was standing next to a fence in the area of 37th Avenue South and Sixth Street South, in St. Petersburg, Pinellas County, Florida. Kurt A. Bradshaw, a white officer, [sic] for the St. Petersburg Police Department deliberately without any provocation or resistence [sic] on my part, fired his taser at my face, striking me in the face and left forearm, causing me pain and suffering and scarring on my face and also mental harm. Kurt A. Bradshaw, at that time and place, was dressed in all black without any identifying marks on the front of his clothes to show that he was a law enforcement officer. He [sic] Kurt A. Bradshaw, just exited an automobile which was unmarked. He pointed what I took to be a gun at me, and I ran from him, taking him to be a robber. At no time did he identify himself as a police officer or show a badge or identification. By his action, he made me afraid that he intended to harm or injure me. I am a black man, 5'4" tall and 140 pounds in weight. He is more than six feet tall and appears to weigh more than 220 pounds. When he caught up with me, he ordered me to raise my hands, and to get on the ground. As I was complying, he fired his taser at me. At no time did I attempt to resist him or to provoke him in any way.

(Doc. No. 1, Complaint, pp. 11-12).

Miffin seeks money damages.

The Marshal personally served Defendant Bradshaw who filed a motion to dismiss, or in the alternative, motion for summary judgment on October 6, 2008. (Doc. No. 16). He attached an affidavit in support, stating:

1. My name is Kurt A. Bradshaw, and I am named as a Defendant in above-captioned case.

2. I have read and am familiar with the allegations of the Complaint for Civil Rights Violation filed herein by the Plaintiff, Sharif Miffin.

3. On or about September 4, 2007, I was a sworn police officer for the St. Petersburg Police Department and member of the Street Crimes Unit in full uniform in an unmarked patrol cruiser parked in the 600 block of 37th Avenue south. My uniform consisted of a black polo shirt and black pants with a tactical outer carrier ballistic vest marked in large silver letters on the right chest area with the word "Police" and on the left chest area with a large silver police badge.

2

4. At that time and place I observed a vehicle parked on the south curb line of 37th Avenue South facing west with the driver of the vehicle reaching toward the center dashboard. I randomly entered the vehicle tag number in my computer, and I received information in response to my computer inquiry that the subject vehicle was reported stolen on September 3, 2007. I verified this information and notified other members of the street crimes unit in the area that the subject vehicle was reported stolen.

5. I watched the driver of the subject vehicle exit the vehicle and begin walking east along the south curb line of 37th Avenue South. He was holding something in his hands at the time. I exited my cruiser and observed the driver of the vehicle looking at me. I ordered the driver to stop. The driver then looked at me and began running southbound. I chased after the driver for a distance and saw him throw some items he had in his hands under a boat in a yard and jump a wooden fence and continue to run away from me and to the south. I then provided the description and direction of travel of the driver by radio to other responding police units. I took no further action with regard to the driver who eventually ran beyond my field of vision.

6. I had no involvement with the driver, who was later identified as Sharif Miffin other than as described above. At no time did I use my taser on Mr. Miffin. I did not have any physical contact with Miffin on September 4, 2007, and I did not arrest him.

7. Each of the foregoing statements is made on the basis of my own personal knowledge.

(Doc. No. 16-2).

This Court initially ordered the Plaintiff to respond to the motion for summary judgment on or before November 16, 2008. (Doc. No. 17). After Plaintiff moved for an extension of time due to "limited law library, legal assistance" (Doc. No. 18), the Court extended the time for response to December 30, 2008. (Doc. No. 19). Instead of filing the response as ordered, on January 5, 2009, Plaintiff filed "Plaintiff's Motion To Compel the Defendant Kurt A. Bradshaw to Serve the Plaintiff with a True Copy of All Pleadings, Etc., that He Has Filed With The Court in Regard to This Case and/or Motion To Strike

3

Defendant's Motion To Dismiss/Summary Judgment, On the Basis of Ex-Parte Communications Violation With the Court" (Doc. No. 23), in which motion, for the first time, Plaintiff asserted that the Defendant had "not provided him with any copies of Defendant's motions."

Defendant denied this, but provided Plaintiff with additional copies of the motions and related supporting documents. On January 5, 2009, Plaintiff also filed a motion for default and final judgment. (Doc. No. 24). He attached a police report authored by St. Petersburg Police Officer Michael J. Burch. (*See* Exhibit One Attached to this Order).

On January 13, 2009, the Court denied Plaintiff's motions for default and final judgment, and ordered that "Plaintiff shall respond to Defendant's motion to dismiss, or in the alternative motion for summary judgment, on or before February 5, 2009." (Doc. No. 27). Subsequently, the Court repeated, in its order of January 28, 2009, that "Plaintiff's response to defendant's motion to dismiss, or in the alternative, motion for summary judgment is due on or before February 5, 2009." (Doc. No. 32).

On February 11, 2009, Plaintiff did not file the response as ordered, but filed a motion to stay the case asserting that he had been transferred from one correctional facility to another for the purpose of standing trial on various criminal charges and forgot to take his "documents reference to this civil case." (Doc. No. 35).

On February 27, 2009, Plaintiff filed a motion for extension of time of ten days to March 5, 2009, to file his response to the Defendant Bradshaw's motion for summary judgment, stating "he will not need anymore [sic] extention [sic] of time as to this issue." (Doc. No. 39). On March 2, 2009, the Court granted the motion for extension of time until March 5, 2009, as requested, and denied the motion to stay as moot. (Doc. No. 40).

On March 9, 2009, Plaintiff filed "Plaintiff Miffin's Response/Motion To Dismiss Defendant Bradshaw's Motion To Dismiss Complaint or, in the Alternative Dispositive Motion for Summary Judgment and Memorandum of Law" and affidavit in support of the response. (Doc. No. 41). Plaintiff's affidavit reads:

> Before me, the undersigned authority, duly authorized in the State of Florida, County of Taylor to administer an oath, personally appeared Sharif S. Miffin, who being first duly sworn, deposes and says as follows:
>
> 1. My name is Sharif S. Miffin, and I am the pro se Plaintiff in the above-captioned case, and is otherwise sui juris.
>
> 2. I have read and familiarized myself with the Defendant Bradshaw's motion to dismiss complaint, or, summary judgment and his affidavit in support thereof, filed as Doc. # 16 & 16-2, respectively.
>
> 3. On Tuesday, September 4th, 2007, at approximately 2:45 p.m., while I was taking my daily walk through my neighborhood, in approximately the 600 block of 37th Street South in St. Petersburg, I noticed in the course of walking that, a dark blue car with dark tinted windows was pulled, face forward, into the driveway of an abandon [sic] house.
>
> A). As I pasted [sic] the abandon [sic] house with the car parked in the driveway, I also notice another car parked nexts [sic] to the curbline, facing me. Neither car have I ever seen before this day in my neighborhood.
>
> B). As I approached the parked car facing me, I stop [sic] to rest. As I was standing and resting approximately between the parked car at the curb line and a fence I heard a car door slam shut from behind me and foot steps running towards me.
>
> C). Simultaneously, as I heard the car door slam shut and the running foot steps behind me, I turned around to see a person dressed in all black holding a large-caliber handgun running towards me from where [sic] the parked car in the driveway of the abandon [sic] house.
>
> D). Fearing for my life it was a robber and I would be killed, I took off running for my life as fast as I possibly could, until I could not run no more, and then I found a safe place to hide myself from the imminent danger in someones[sic] backyard.
>
> E). The nexts [sic] thing I knew is that, this person in all black with the large-

caliber handgun had found me. I thought I was going to die right there and then.

F). As I looked up, for the first time, I saw a police badge hanging from what appeared to be a chain of the person in all black neck [sic] that, I had ran [sic] from.

G). That person in all black who chased me with a large-caliber handgun is Defendant - Officer Kurt A. Bradshaw, a police officer of the St. Petersburg Police Department.

H). Once Officer Bradshaw had found me hidding [sic], he held in his hand and was pointing at my head four to six feet away what appeared to be a different type of a handgun, which looks like a taser gun now.

I). As Officer Bradshaw was ordering me to lay [sic] on the ground, another police officer in full uniform arrived upon the scene. That person is Officer Michael T. Burch, also a police officer of the St. Petersburg Police Department.

J). As Officer Bradshaw was ordering me to lay [sic] on the ground by racially instructing to: "get your fucking black ass on the ground you little fucking nigger, you really didn't think your fucking black ass would get away from me, did you." [sic]

K). I overlooked the racial slurs by Officer Bradshaw, and as I was complying with Officer Bradshaw's commands to lay [sic] on the ground, while I was on my knees and unarmed and before I was able to lay all way down on the gound [sic], Officer Bradshaw viciously growled at me: "I'm going to give your fucking little black ass something fucking remember me by, for the nexts [sic] time you decide to run from me, you will get this. . . "

L). Without any resistences [sic], provocation or threats on my part, Officer Bradshaw pointed his taser gun directly at my head -- fearing for my life, I did like any normal individual would have done in like circumstances, I turned my head away from the weapon defensively to the right and tried to block with my left arm. Officer Bradshaw fired his taser gun at me.

M). As a result of Officer Bradshaw discharging his taser gun at me, I was hit by the taser probes, one probe striking me in the face approximately a [sic] 1/2 inch below my left eye and the other probe striking me in the left forearm.

N). As such, I was injured in an about my body, which I suffered extreme pain therefrom. In addition to the extreme pain I suffered from Officer Bradshaw's vicious attack upon my body, I then and now suffer from blurred vision in my

6

left eye, twitching of my left eye, pain and numbness around my left eye, and pain and numbness in my left forearm, as well as permanent scarring on my face below my left eye, where one of the taser probes had struck me and embeded [sic] itself in my face, and as well I suffered mental anguish.

O). After this vicious attack upon my body from Officer Bradshaw, I was handcuffed and placed under arrest. While on the way to Officer Bradshaw's unmarked dark blue police car with the dark tinted windows that was pulled face forward into the driveway of the abandon [sic] house, Officer Bradshaw then advised me that, [sic] I was under arrest for the red car that, [sic] was parked at the curb that, [sic] I had stop nexts [sic] to rest during my daily walk.

P). Officer Bradshaw was the same person who arrested me that day, put me into his unmarked police car, and then transported me to the hospital emergency room for treatment of my injuries that were deliberately and viciously inflicted upon by body for no justifiable reasons by Officer Bradshaw.

Q). Officer Bradshaw was the same person who then transported me from the hospital emergency room after treatment of my injuries, [sic] to jail that day.

R). At no time did I ever see any distinguish [sic] marking on Officer Bradshaw who was dressed in all black that day, that, [sic] would have identified him as a police officer. Contrary to Officer Bradshaw [sic] affidavit, he was not wearing any type of vest that day, that would have put me on notice that, he was an [sic] law enforcement officer.

S). At no time did I ever authorize Officer Bradshaw that day, to use his taser gun on me in anyway, shape or, form. The vicious attack upon my body that day was racially motivated by the evil demeanor of Officer Bradshaw.

_____

4. I further state, during this racially motivated, deliberated [sic] and vicious attack upon my body that day from Officer Kurt H. Bradshaw, Officer Michael J. Burch, just stood there and absolutely did nothing to stop Officer Bradshaw from inflicting this racially motivated, delibberated [sic] and vicious attack upon my body, that day.

A). Officer Burch had every reasonable opportunity to intervene and prevent this racially motivated, deliberated [sic] and vicious attack upon my body that day; [sic] by the excessive force, which was used by Officer Bradshaw upon me but Officer Burch did not step in to stop it.

B). Officer Burch, being in law enforcement was in the right position to have known what Officer Bradshaw was doing to me, and did to me, that day, were

[sic] violating my constitutional rights, under our constitution.

C). Instead, Officer Burch, just stood there and did not take any steps whatsoever to intervene to stop the racially motivated remarks and threats upon my body from Officer Bradshaw -- nor did he intervene to stop the racially motivated, deliberate and vicious episode of excessive force that was inflicted upon my body by Officer Bradshaw, that day.

———————————

5. I further state here that , [sic] my 1983 civil rights action is structured that my constitutional rights under the 1, 8, 9 & 14 Amendments of the United States Constitution were violated by the racially motivated, deliberated [sic] and vicious attack upon my body by Officer Bradshaw, that day for excessive force!

6. I further state here that, I have only previously filed only two such actions I believe, which were not dismissed as frivolous - nor malicious that would subject them as strikes under the Prison Litigation Reform Act passed by Congress.

7. Each of the foregoing statements is made on the basis of my personal knowledge of the facts contained herein.

On that same date, March 9, 2009, Plaintiff Miffin filed a motion for leave to file an amended civil rights complaint. On March 11, 2009, the Court deferred ruling on Plaintiff's motion for leave to amend his complaint and ordered the Defendant to respond to the motion for leave to file an amended complaint. (Doc. No. 44).

On March 13, 2009, Defendant Bradshaw filed his response in opposition to Plaintiff's motion for leave to file an amended complaint. (Doc. No. 45). Also on March 13, 2009, Defendant Bradshaw filed a motion to strike portions of Plaintiff's affidavit in response to Defendant's motion to dismiss/and or motion for summary judgment. (Doc. No. 47). On March 17, 2009, the Court denied Plaintiff's motion for leave to file an amended complaint and ordered Plaintiff to respond to Defendant's motion to strike portions of Plaintiff's affidavit on or before March 30, 2009. (Doc. No. 48).

On March 26, 2009, Plaintiff filed an amended civil rights complaint naming new Defendants. (Doc. No. 49). On April 1, 2009, Defendant Bradshaw filed a motion to strike the amended complaint. (Doc. No. 50). On April 2, 2009, Plaintiff filed a motion to extend time to answer the motion to strike portions of his affidavit. (Doc. No. 51). On April 3, 2009, the Court entered an order stating:

> Plaintiff has repeatedly sought to protract and delay this litigation as evidenced by the chronology set out above. The strategy evinced by his filings appears to be to file something that is not responsive to Defendant Bradshaw's Motion(s), at the last moment of a Court imposed deadline, in an attempt to divert the attention of the Court to some new issue. The Court has been careful to allow the pro se Plaintiff ample time to respond to Defendant's motions.

The Court granted Plaintiff's "motion for excusable negligence of time [to respond]" until May 18, 2009. The Court stayed and administratively closed the case until May 18, 2009, or until Plaintiff filed his response prior to May 18, 2009. On May 4, 2009, Miffin filed a motion to reopen this case and a response to Defendant's motion to strike portions of Miffin's affidavit. (Doc. Nos. 53, 54). In the response (Doc. No. 54), Plaintiff moved to withdraw his original affidavit and substitute his amended affidavit in opposition to Defendant Bradshaw's motion for summary judgment. (See Doc. No. 54 for the amended affidavit). The amended affidavit is essentially the same as Miffin's original affidavit, with the addition of one paragraph that reads:

> Q). While I was in the hospital emergency room to have the taser probe surgically removed from my face, is [sic] when I learned the identity of the person dressed in all black was Defendant/Officer Bradshaw. I was able to learn his identity when he gave his name to hospital officials, upon my admission.

(Doc. No. 54, p. 12).

## Standard for Summary Judgment

On a motion for summary judgment the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). If he does so, the burden shifts to the Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986). An issue of fact is "material" if it could affect the outcome of the case. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988); *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999) ("We are required to resolve all reasonable inferences and facts in a light most favorable to the nonmoving party.").

"Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied,* 522 U.S. 1126 (1998)(quoting *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(c),(e)). The nonmoving party need not produce evidence in a form that would be admissible, as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). *Owen v.*

*Wille*, 117 F.3d at 1236; *Celotex*, 477 U.S. at 324.

## DISCUSSION

The definitive issue before the Court is whether Defendant Bradshaw was the officer who chased, tasered, and arrested Plaintiff Miffin on September 4, 2007. In his affidavit, Officer Bradshaw avers that he did not chase Miffin, did not taser him, and did not arrest him. (*See* Doc. No. 16 [Affidavit of Officer Bradshaw]). Miffin contends that Officer Bradshaw *did* chase him, taser him, and arrest him.

The facts relevant to the issue are found in Miffin's complaint, his amended affidavit, and the police report attached to Miffin's motion for default and final judgment. (Doc. No. 24). The police report, which was prepared by Officer Michael J. Burch on September 4, 2007, contradicts Miffin's allegation that Officer Bradshaw was the officer who arrested Miffin on September 4, 2007. The police report reads, in pertinent part:

> This is a follow-up report to a grand theft auto. The above listed arrested subject [Sharif Miffin] was seen driving a 1991 Pontiac 6000 with Florida tag #D398FM. Office K. Bradshaw observed the above listed arrested subject driving the vehicle and running from it. The arrested subject was medically cleared from Edward White Hospital. Officer K. Bradshaw will set an invest on a later date.
>
> . . . .
>
> On todays [sic] date, 09/04/2007, I was assigned as a member of the Street Crimes Unit operating a marked police cruiser and in full uniform. Officer K. Bradshaw advised he discovered a stolen vehicle (1991 Pontiac 6000 with Florida tag #D398FM). Officer K. Bradshaw advised the vehicle was in the area of 37 Av. S. & 6 St. S. Officer K. Bradshaw advised he observed a black male driver wearing a white tank top and white shorts. Officer K. Bradshaw advised the suspect exited the vehicle and started to run south. Refer to his follow-up for further details.
>
> . . . .
>
> I moved into the area and I drove my cruiser to 38 Av. S. and headed

west from 6 St. S. As I was driving westbound, I observed a black male wearing a white tank top, white shorts jump over a six foot wood fence. The suspect was just east of 637 38 Av. S. I stopped my cruiser and I observed the suspect run northwest back toward the six foot wood fence. The suspect jumped back over the fence out of my sight. I exited my cruiser and ran to the north on the west side of 637 38 Av. S. toward the alley removing my issued Taser. Once I made it to the alley, I did not see the suspect. Fearing the suspect may have cut back south, I started to move back toward 38 Av. S. on the east side of 637 38 Av. S.

I approached an open shed and checked it and found the suspect was not inside. When I reached the south side of the shed, I discovered the suspect, SHARIF MIFFIN, standing next to a six foot wood fence. I pointed my Taser at Miffin and advised him he was under arrest and no to move. I used my aiming device and pointed it at his upper chest area. MIFFIN started to move to the south like he was going to run. I was approximately 4-5 feet away from MIFFIN when I deployed my Taser. At the same time he raised both of his arms and ducked down. My Taser took effect and MIFFIN dropped to the ground. Once my Taser finished the cycle, I advised MIFFIN to stay on his stomach and not to move. I advised him several times not to move or I would use my Taser again. MIFFIN complied and he placed both of his hands above his head as I directed. I advised other members of the Street Crimes Unit of my location and I stood by until they arrived. I continued to give MIFFIN verbal commands not to move and he complied. Officer P. Postle arrived, and MIFFIN was handcuffed without further incident.

Once he was handcuffed, I discovered one probe struck his left forearm and the second probe struck the left side of his face. Officer P. Postle removed the probe from MIFFIN'S left forearm and the other probe was left in. I advised Sgt. T. Skinner of my Taser deployment and he collected my EMDW cartridge, AFID, and one probe.

MIFFIN was placed into my cruiser and I transported him to Edward White Hospital. Upon my arrival, he was treated and medically released. Dr. Davis removed the probe from MIFFIN'S face and it was placed into a plastic container. I then transported MIFFIN to the rear of the police department and Detective M. Brown interviewed him. Upon Sgt. T. Skinner's arrival, I gave him the second probe from my Taser.

(Doc. No. 24-3).

## Analysis

It is the law in this Circuit that "when the exhibits contradict the general and

conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister,* 556 F.3d 1283, 1292 (11th Cir. 2009); *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *see Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").[1]

Because Plaintiff Miffin's allegations are not general and conclusory, but are specific as to Office Bradshaw, the police report does not "govern or control" in this case, even though the police report contradicts Miffin's allegations against Bradshaw. Defendant Bradshaw is not entitled to summary judgment because genuine issues of material fact remain for trial: whether Bradshaw was the officer who chased, tasered, and arrested Miffin.

## Qualified Immunity

Defendant Bradshaw alluded to qualified immunity as a defense. Whether qualified immunity shields an official from suit is a question of law.[2] *Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990). However, the issue in this case is not a question of law, but a question of fact: was Officer Bradshaw the officer who chased, tasered, and arrested Plaintiff Miffin?

Accordingly, the Court orders:

1. That Defendant Bradshaw's motion for summary judgment (Doc. No. 16) is denied.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[2] A district court's denial of a motion for summary judgment on the basis of a qualified immunity defense is an immediately appealable final decision when the appeal involves a question of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303* (11th Cir. 2006), *cert. denied,* --- U.S. ----, 127 S.Ct. 2428 (2007).

2. That Defendant's motion to strike portions of affidavit of Sharif Miffin (Doc. No. 47) is granted. Plaintiff is proceeding on his amended affidavit.

3. That Defendant's motion to strike Plaintiff's amended complaint, filed after the Court denied his motion to amend his complaint (Doc. No. 50) is granted. The Clerk shall strike and return the amended complaint.

4. That Plaintiff's motion to reopen this case (Doc. No. 53) is granted. The Clerk is directed to reopen this case.

5. That Defendant shall file his answer on or before July 12, 2009.

ORDERED at Tampa, Florida, on July 6, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Sharif S. Miffin