UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARIF S. MIFFIN,

    Plaintiff,

v.                         Case No. 8:08-cv-592-T-33EAJ

KURT A. BRADSHAW,

    Defendant.
_____

**O R D E R**

This cause is before the Court on Defendant Bradshaw's second motion for summary judgment (Doc. No. 63) and supplements to the motion (Doc. Nos. 65, 66) (hereinafter "second motion for summary judgment") with affidavits and exhibits (Bradshaw Affidavit, Doc. No. 16-2; Burch Affidavit, Doc. No. 63-2; Issacs Affidavit, Doc. No. 64 [with exhibits]).

The Court ordered Plaintiff Miffin to deliver his response to Bradshaw's second motion for summary motion to prison authorities for mailing on or before November 28, 2009. As of the date of this Order, the Court has not received Miffin's response.

Miffin filed his 42 U.S.C. § 1983 civil rights complaint on March 28, 2008, alleging that on September 4, 2007, Defendant Bradshaw, a St. Petersburg Police Officer, "deprived me of my civil rights under color of law by badly injuring me with a taser without adequate warning or notification and without justification." (Doc. No. 1, Complaint, p. 11).

Miffin seeks money damages and any other relief the Court deems appropriate.

## FACTUAL BACKGROUND

During all of the times relevant to Miffin's complaint, Defendant Bradshaw was a sworn St. Petersburg Police Department law enforcement officer.

Miffin, a prisoner confined in the Taylor Correctional Institute, Perry, Florida, is awaiting trial on charges for which he was arrested by a St. Petersburg Police Department Officer on September 4, 2007. Probable cause has been found to hold him on those charges of auto theft. (Isaacs Affidavit, Doc. No. 64).  Miffin filed this action pro se and alleges in his Complaint that on September 4, 2007, as he was standing next to a fence in the area of 37th Street South in St. Petersburg, Kurt A. Bradshaw, a St. Petersburg police officer, who was wearing all black clothing without any police markings, emerged from a non-marked vehicle, and without any provocation tasered Miffin in the face and left forearm as Miffin was complying with the officer's order to lie on the ground, causing Miffin physical injury and mental harm. (Complaint, Doc. No. 1).  In his later affidavit, Miffin modifies the facts, alleging that he ran and hid from Officer Bradshaw initially thinking him to be "a robber." (Doc. No. 41) .Although Miffin does not allege that Bradshaw followed him or chased him, Miffin says that in his hiding place he "saw a police badge hanging from what appeared to be a chain of the person all in black neck [sic] that, I had ran [sic] from." (Doc. No. 41) He identifies this person as Officer Bradshaw and says that when Bradshaw pointed a taser at him "fearing for my life, I did like [sic] any normal individual would have done in like circumstances, I turned my head away from the weapon defensively to the right and tried to block with my left arm." (Doc. No. 41)

This statement, along with Miffin's earlier statement in his complaint that he had begun complying with the officer's order to lie on the ground, mirrors the account of another

2

officer, Michael Burch. (Burch Affidavit, Doc. No. 63-2). Officer Burch avers that Miffin "ducked down" when the officer [Burch] pointed the taser, resulting in the probe striking Miffin in the face rather than where the officer had been aiming.

Although Miffin has sworn that Bradshaw fired the taser at him and that Burch simply stood by (Doc. No. 41), the interrogatories that Miffin sent to Officer Bradshaw (Doc. No. 66) reveal Miffin's uncertainty as to which officer actually did what. Furthermore, although Miffin claims he learned Officer Bradshaw's name when the officer identified himself to "hospital officials, upon my admission" (Doc. No. 54, p.12), the hospital records of his visit to Edward White Hospital on September 4, 2007 (Doc. No. 64, Isaacs Affidavit, Exhibit E) reflect no officer's name.

Miffin sent a letter to the St. Petersburg Police Department on or about October 25, 2007, complaining of being tasered by "a [sic] officer of the St. Petersburg Police Dept." (Doc. No. 65, Defendant's Request for Admissions and Doc. No. 65-2, Plaintiff's Responses). Miffin provides a clue that he may have identified Officer Bradshaw as the officer who tasered him based on an annotation "WIR" written next to the name of Officer Burch on a copy of a police report (Doc. No. 54, p. 4). Miffin claims "WIR" means "Witness in Report" and that Officer Burch's report stated that he was a witness to Officer Bradshaw's tasering Miffin. However, the State Attorney's Office has provided information that their office made the "WIR" notation, and that the notation does not stand for "Witness in Report" as Miffin claims. Instead, "WIR" is a computer code to identify witnesses in recurring cases with that office, such as police officers (See Doc. No. 24-3 and Doc. No. 64, Isaacs Affidavit, Composite Exhibit F).

Miffin's uncertainty about identifying Officer Bradshaw is further evidenced by his

3

own interrogatories sent to Officer Bradshaw (Doc. No. 66) in which he asks the Defendant to state "whether or not if [sic] you were the arresting police officer of the plaintiff on September 04, 2007, or the police officer who transported plaintiff to the hospital to have the "taser probe" surgery [sic] removed from his face, or the police officer who transported plaintiff from the hospital to the Pinellas County Jail? If so, describe as much as possible as to which part you participated [sic]." (Doc. No. 66, p. 7, question 22). This question suggests that Miffin is not certain about what officer did what. However, the plausible evidence submitted by the officers show that Burch, not Bradshaw, arrested Miffin and that Bradshaw did not taser Miffin. (Bradshaw Affidavit, Doc. No. 16-2; Burch Affidavit, Doc. No. 63-2).

The evidence is that regardless of which officer used the force on Miffin, that force was objectively reasonable and caused only a *de minimus* injury to Miffin. Miffin does not and cannot claim that his arrest for car theft was invalid or without authority. The state prosecution is currently active on his criminal charge of Automobile Theft and Miffin is awaiting trial. (Doc. No. 64, Isaacs Affidavit, Exhibit G).

Defendant Bradshaw asserts that he was a St. Petersburg police officer on duty on September 4, 2007. (Bradshaw Affidavit, Doc. No. 16-2). Bradshaw states that while he was parked in his unmarked cruiser on 37th Street, wearing his police uniform consisting of a black polo shirt and black pants with a tactical vest marked with "Police" in large silver letters and a police badge, he observed an individual who was later identified as Miffin in the driver's seat of a vehicle that was determined to have been reported stolen. Bradshaw ordered the driver to stop when he exited the vehicle and began to walk along the curbline of 37th Street. (Bradshaw Affidavit, Doc. No. 16-2). Officer Bradshaw states Miffin then ran

4

away from him and that he saw Miffin throw some items under a boat and jump a wooden fence. (Bradshaw Affidavit, Doc. No. 16-2). Bradshaw did not pursue Miffin, but rather radioed other police units for backup. Bradshaw took no further action and did not use his taser on Miffin or have any physical contact with him. (Bradshaw Affidavit, Doc. No. 16-2).

Officer Michael Burch received the radio message from Officer Bradshaw regarding Miffin's flight. (Burch Affidavit, Doc. No. 63-2). Officer Burch recounts that he was on duty in full uniform in a marked police cruiser on September 4, 2007, when he received a radio message from Officer Bradshaw advising that Bradshaw had located a stolen vehicle and observed a black male driver wearing a white tank top and white shorts exit the vehicle and run south. (Photos of Miffin at the hospital and jail show that he was wearing a white tank top). (Doc. No. 63-2, Burch Affidavit, Exhibits A and B) Burch states that he moved toward the area where the vehicle had been located and saw a black male (later identified as Miffin) wearing a white tank top and white shorts jump over a wooden fence, run and then jump back over the fence. Burch approached the area on foot where he saw a black male and eventually located Miffin standing next to a wooden fence beside a shed. (Doc. No. 63-2, Burch Affidavit).

Miffin was told he was under arrest. (Doc. No. 63-2, Burch Affidavit, ¶ 4). Miffin states that the officer who shot the taser at him had ordered him to lie on the ground before the tasering occurred. (Doc. 41, ¶ H-L). Burch pointed his taser at Miffin, and when Miffin started to move as though he was about to flee, Burch fired the taser. (Doc. No. 63-2, Burch Affidavit, ¶ 4). At the same time, Miffin raised both of his arms and ducked down, causing one probe from the taser to hit him in the face and the other in the forearm. (Doc. No. 63-2, Burch Affidavit). The probe that hit him in the face was later removed at Edward

5

White Hospital. (Doc. No. 64, Isaacs Affidavit, Exhibit E). Burch states Bradshaw was not present at the location where Miffin was tasered and arrested. (Doc. No. 63-2, Burch Affidavit). Burch states that the photographs attached to his affidavit fairly and accurately depict Miffin at the hospital before the probe was removed and at the jail after it had been removed. (Doc. No. 63-2, Burch Affidavit, Exhibits A and B) Enlargements of the jail photograph of a smiling Miffin are attached to the Isaacs affidavit. (Doc. No. 64, Isaacs Affidavit, Exhibits B and C). They accurately reflect Miffin's minor injury from the taser probe.

Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that

there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences n favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### DISCUSSION

Because Section 1983 grants no substantive right but provides only "a method for vindicating federal rights elsewhere conferred," a Section 1983 claim requires the deprivation of a specific federal right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The

7

Fourth Amendment's protection against unreasonable seizure guards against an arrest without probable cause and the use of excessive force during an arrest. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citation omitted). Miffin argues that use of the taser constituted excessive force under the circumstances. Defendant Bradshaw claims that, based on applicable case law, the use of reasonable force to execute a lawful arrest does not violate the Constitution. *McNally v. Eve*, 2008 WL 1931317 (M.D. Fla. May 2, 2008), "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

"The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (citations omitted). The "calculus of reasonableness" must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Determining whether a particular use of force was reasonable requires consideration of factors such as (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396 (1989). In *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004), the Court stated that "in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."

Applying the calculus of reasonableness analysis to the facts before this Court

8

considered in the light most favorable to Miffin, establishes that the force used against Miffin was reasonable regardless of the identity of the officer applying that force. Both officers Bradshaw and Burch knew that Miffin was suspected of automobile theft, a serious crime. (Doc. No. 16-2, Bradshaw Affidavit; Doc. No. 63-2, Burch Affidavit). Both officers knew that Miffin fled when they attempted to confront him. (Doc. No. 16-2 Bradshaw Affidavit; Doc. No. 63-2, Burch Affidavit) Both officers could have reasonably believed that Miffin posed a threat to their safety since he purposely avoided their efforts to control his movement in order to approach him and they had no way of knowing whether or not he was armed. Miffin actively attempted to flee and evade the officers. "The Fourth Amendment permits increased force when a subject is attempting to run away and thereby evade capture." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007).

Further, applying the *Draper* factors, a reasonable police officer could have determined that there was a need for the application of force because of Miffin's fleeing the officers. The force used, a single application of the taser, was reasonably related to the need for such force. Finally, the injury inflicted was minimum not extensive and excessive. (See below). Thus, based upon an examination of the facts viewed most favorable to Miffin in light of the analysis for reasonableness contained in the applicable case law, "a reasonable officer would believe that this level of force [was] necessary to the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). This conclusion supports summary judgment in favor of Defendant Bradshaw and/or Burch, if he were a Defendant, since the use of force against Miffin was reasonable and did not violate the Fourth Amendment.

*De Minimus Use of Force*

A *de minimus* use of force producing no physical injury will not support a claim for excessive force in violation of the Fourth Amendment. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) (where the "Court explained that when applied in excessive force cases, qualified immunity applies unless application of the standard would inevitably lead every reasonable officer [in the position of the defendant officer] to conclude the force was unlawful."); see also, *Sullivan v. City of Pembroke Pines*, 161 Fed. Appx. 906 (11th Cir. 2006) and *Brosseau v. Haugen*, 534 U.S. 194, 198 (2004).

The physical injury complained of by Miffin resulting from an unconstitutional application of force is an injury to his face from the errant taser probe. Although Miffin claims that the injury was grievous and severe (Doc. No. 41, ¶ N), the photographs taken of him at the hospital where the probe was removed, and later at the jail when he was booked belie his claims as to the severity of the injury and its emotional consequences. (Doc. No. 63-2, Burch Affidavit, Exhibit B; Doc. No. 64, Isaacs Affidavit, Exhibits B and C) His smiling expression in the booking photograph suggests contented well-being rather than "mental anguish," and the enlargements show that the probe left little evidence of its penetration near his nose. Miffin has offered no medical evidence of any permanent damage or scarring resulting from the alleged injuries. The hospital records relating to his visit there after his arrest also confirm the minor nature of his injury from the taser and reveal that he was more concerned with the right ankle sprain he sustained from jumping fences than the injuries he sustained from the taser probe. (Doc. No. 64, Isaacs Affidavit, Exhibit E)

There is no evidence that the force intentionally used by Officer Burch or any other police officer including the Defendant Kurt Bradshaw was anything more than *de minimus*

at most, or that, even accidentally, the force could have produced an injury such as is complained of by Miffin. Officer Burch explains that he did not aim the taser with the intent of hitting Miffin in the face and believes that Miffin's behavior in raising his arms and ducking resulted in the probe hitting him in the face. (Burch Affidavit, ¶¶ 4-5)

## Qualified Immunity

Qualified immunity protects officials performing discretionary functions from liability "where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Strock v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). As long as an official's conduct is not unlawful, the doctrine of qualified immunity exempts government officials from damage suits to enable them to perform their responsibilities without threats of liability. *Hutton v. Strickland*, 919 F.2d 1531, 1536 (11th Cir. 1990). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000). Subjective intent is irrelevant to the issue. *Id.* Under the "objective legal reasonableness" standard, a government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time of conduct occurred." *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir. 1992). The Supreme Court has set forth a two part analysis

11

to be applied to a defense of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

In this case, the threshold inquiry is whether Miffin's allegations, if true, establish a constitutional violation. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. However, if a constitutional right would have been violated under Miffin's version of the facts, the next sequential step is to ask whether the right was clearly established. *Id.*; *Strock*, 354 F.3d at 1314. The *Saucie*r analysis is still an appropriate consideration in qualified immunity cases but the sequence of analysis should not be regarded as an inflexible requirement in all cases. *Pearson v. Callahan*, 129 S. Ct. 808 (2009).

In *Saucier*, the Supreme Court stated that the relevant query is whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. In *Hope,* the Supreme Court refined the *Saucier* query, holding that the "…salient question… is whether the state of law gave [the officers] fair warning that their alleged treatment [of Miffin] was unconstitutional." The *Hope* Court emphasized that officers sued in a section 1983 action have a "right to fair notice." 536 U.S. at 739. To demonstrate that summary judgment is appropriate on a qualified immunity defense, the defendant must show that he is entitled to judgment as a matter of law, and that there are no genuine issues of material fact pertinent to that law. *Sims v. Metro Dade County*, 972 F.2d 1230, 1233-34 (11th Cir. 1992)(citing *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1988)).

In the Eleventh Circuit, "for the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and

12

factually defined context to make it obvious to all reasonable government actors in the defendants' place, that what he is doing violates federal law." *Jenkins v. Talladega City Board of Education*, 115 F.3d 821, 823 (11th Cir. 1997)(en banc)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"A public official is entitled to qualified immunity unless, at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable similarly situated public officials that what [the official] was doing violated [the plaintiff's] federal rights in the circumstance." *Wilson v. Zellner*, 200 F.Supp. 2d 1356, 1360 (M.D. Fla. 2002) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1030-31 (11th Cir. 2001)(en banc)). 1233-34 (11th Cir. 1992)(citing *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1988)).

Officer Bradshaw is entitled to qualified immunity because the record facts demonstrate that he was acting within the scope of his discretionary authority and did not violate Miffin's clearly established constitutional rights of which any reasonable police officer should have known. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

"The purpose of this immunity is to allow government officials to carry out their discretionary functions without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Since qualified immunity is "an entitlement not to stand trial or face the burdens of litigation," *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985), questions of qualified immunity are to be resolved "at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

Because federal law recognizes the importance of an early resolution of the

applicability of the defense of qualified immunity, there are heightened pleading requirements for such civil rights cases, and under those pleading requirements, vague and conclusory allegations in a complaint would not be sufficiently factual to support an action. *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).

To demonstrate that he or she is entitled to qualified immunity, a government official must first prove that he or she was acting within his or her discretionary authority. *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). "To establish that the challenged actions were within the scope of his authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Habert Intern , Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). The proper inquiry for the Court is "not whether it was within the defendant's authority to commit the [alleged] illegal act (*i.e.*, false arrest or excessive force)." *Id.* Framed that way, the inquiry is no more than an "untenable" tautology. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992); *Shechter v. Comptroller of New York*, 79 F.3d 265, 269 (2d Cir.1996). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.' " *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)(quoting *Doe v. McMillan*, 412 U.S. 306, 319-20 (1973)). Thus, "[a]n official acts beyond the scope of his [discretionary] authority only if the injury occurred during the performance of an act clearly established to be outside of the limits of that authority." *Id.*

The actions of the government official are within that official's discretionary function if they "are of a type that [falls] within the employee's job responsibilities." *Crosby v. Monroe*

14

*County*, 394 F.3d 1328, 1332 (11th Cir. 2000). *See also, Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004) (conduct may be within the scope of discretionary authority if performed "through means that were within [the officer's] power to utilize," even if the means were unconstitutional).

In the present case, it is clear that Officer Bradshaw was acting within his discretionary authority as law enforcement officer of the City of St. Petersburg, Florida, for purposes of the qualified immunity analysis. As a municipal law enforcement officer, he had the discretionary authority to investigate suspected criminal activity and to enforce the laws of the State of Florida. Florida Statutes § 943.10(1). It is undisputed that Officer Bradshaw was performing his duties as a municipal law enforcement officer, and that he possessed the lawful authority to arrest persons who he had probable cause to believe had committed a crime. See Florida Statutes, § 901.15. It is undisputed that he had reason to believe Miffin had committed the crime of auto theft. (Doc. No. 16-2, Bradshaw Affidavit) In his reply to Bradshaw's affirmative defenses, Miffin alleges Officer Bradshaw acted outside the scope of his discretionary authority. (Doc. No. 62); however, Miffin offers no facts in support of this allegation, and the conclusory allegation is insufficient standing alone to defeat Bradshaw's affidavit and facts supporting the contention that he was acting within the scope of his discretionary authority.

Once the governmental official has established that he or she was acting within the discretionary authority accorded to them, the burden shifts to the Plaintiff to show that qualified immunity is inappropriate because the official's conduct violated clearly established constitutional rights of which a reasonable person would have known. *Hope v. Pelzer*, 536 U.S. 730 (2002). This is a burden Miffin cannot meet. Taken in the light most

favorable to the party asserting the injury (in this case, Miffin), the facts do not show that Officer Bradshaw's conduct violated a constitutional right." *Id.*

As far as Miffin's alleged Fourth Amendment excessive force claim is concerned, the use of force did not rise to the level of a constitutional violation because it was reasonable force applied incident to a lawful arrest and the resulting injury was *de minimus* as discussed above.

Even if it is assumed, *arguendo*, that Miffin could carry his burden of establishing a constitutional violation, this Court would then need to examine whether Miffin's rights so violated were shown to be "clearly established" at the time of the violation. In determining whether a constitutional right was clearly established at the time of the alleged violation, the Court's inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz, supra*, 533 U.S. at 201.[1] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. "If the law did not put the officer on the notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 201. The salient question involved in this inquiry is whether the state of the law at the time of the alleged deprivation gave the officers fair warning that their conduct toward Miffin was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730 (2002). This Court must identify that conduct and ask whether a reasonable officer would have fair warning that his conduct would be unconstitutional and in violation of the Fourth Amendment of the United States

---

[1] As mentioned above, *Pearson v. Callahan*, 129 S.Ct. 808 (2009) makes clear that the two-step process is not sacrosanct in the order in which the steps must be taken.

Constitution. The reasonableness of the conduct should be "judged against the backdrop of the law at the time of the conduct." *Brosseau, supra*, 543 U.S. at 198.

There are several approaches to answering this question dependent upon the nature of the challenged conduct. As explained in the *Vineyard* case, fair and clear notice of the unconstitutionality of the conduct could be imparted even in the total absence of case law in a situation where the "conduct [is] so bad that case law is not needed to establish that the conduct cannot be lawful." *Vineyard, supra*, at 1350. *See also, Storck v. City of Coral Springs,* 354 F.3d 1307, 1320 (11th Cir. 2003). "Second, if the conduct is not so egregious as to violate, for example, the Fourth Amendment on its face, we turn to the case law." *Vineyard, supra*, at 1351. "And if a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so with '"obvious clarity' to the point that every objectively reasonable governmental official facing the circumstances would know that the official's conduct did violate federal law when the official acted.' " *Vineyard, supra*, at 1351. "Third, if we have no case law with a broad holding of 'X' that is not tied to particularized facts we must then look at precedent that is tied to the facts. That is, we look for cases in which the Supreme Court or [the Eleventh Circuit Court of Appeals], or the pertinent state Supreme Court has said that 'Y conduct' is unconstitutional in 'Z circumstances.' " "Most judicial precedents are tied to the particularized facts and fall into this category." *Vineyard, supra*, at 1351-1352.

Applying this analysis to the case at hand, the challenged conduct of Officer Bradshaw does not involve the violation of any clearly established rights of Miffin. First, Officer Bradshaw denies that he used any force against Miffin, and while Miffin asserts that Bradshaw was the one who tasered him, he does not disclose how it was that he identified

17

Bradshaw other than to say that he was able to learn his identity when he gave his name to hospital officials, upon his admission. He does not identify the hospital officials. The medical records relating to Miffin's visit to the hospital show that he was not admitted and do not reflect the name of any police officer. Furthermore, if Miffin knew Bradshaw's name at the time of his hospital visit on September 4, 2007, why was he unable to identify the officer who tasered him in a letter of complaint he sent to the St. Petersburg Police Department on or about October 25, 2007? Miffin may have identified the officer based on an annotation "WIR" contained on his copy of a police report he obtained, but the State Attorney's Office has provided information supporting the conclusion that their office made the notation, and it does not stand for "Witness in Report" as Miffin claims.

Miffin's uncertainty about identifying Officer Bradshaw is further evidenced by his own interrogatories sent to the Defendant in which he asks the Defendant to state "whether or not if [sic] you were the arresting police officer of the plaintiff on September 04, 2007, or the police officer who transported plaintiff to the hospital to have the 'taser probe' surgery [sic] removed from his face, or the police officer who transported plaintiff from the hospital to the Pinellas County Jail? If so, describe as much as possible as to which part you participated [sic]."

As stated above, the plausible evidence demonstrates that Bradshaw did not use force on Miffin because he did not arrest him. Officer Burch arrested Miffin.

Secondly, Bradshaw did not violate Miffin's clearly established constitutional rights because, assuming, *arguendo*, that he was the officer who used the taser on Miffin, the uncontroverted facts show that that officer had a reasonable belief that Miffin had stolen a vehicle and that Miffin fled when the police officer approached him that evening. The

18

officer who used the taser on Miffin also reasonably believed that Miffin was about to flee again just before he was tasered. Miffin was observed jumping several fences and admits that he hid from the police "in someones [sic] backyard." Thus, the officer who used the taser on Miffin had an objectively reasonable belief that Miffin would pose a threat to his safety, resist arrest, and/or attempt to flee, justifying the use of the taser that was altogether constitutional and that any reasonable officer would have believed did not violate Miffin's constitutional rights. Under the law existing when the Miffin arrest was made, Officer Bradshaw could have reasonably believed that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, and "that the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (citing *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000)).

The Eleventh Circuit held that the use of a taser in effecting an arrest is constitutional if the amount of force is reasonably proportionate to the need for force under the circumstances. 369 F.3d at 1278. The officer who tasered Miffin could have reasonably believed that the circumstances justified the use of the taser. Miffin cannot carry his burden of establishing a constitutional violation and, even if he could, he cannot show that it was a "clearly established," violation within the meaning of the qualified immunity analysis. Thus, Officer Bradshaw's conduct was not in violation of clearly established federal law, and he is entitled to qualified immunity summary judgment.

Accordingly, the Court orders:

That Defendant's second motion for summary judgment (Doc. No. 63) is granted, on the merits. Furthermore, he is entitled to summary judgment based on qualified

immunity. The Clerk is directed to enter judgment for Defendant Bradshaw and to close this case.

ORDERED at Tampa, Florida, on December 15, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Sharif S. Miffin